**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SIMEX INC. et al.[1],<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 24-10083 (TMH)<br><br>(Joint Administration Requested) |

**DECLARATION OF FOREIGN REPRESENTATIVE PURSUANT TO 11 U.S.C.§ 1515 AND RULE 1007(A)(4) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Jorden Sleeth, to the best of my information and belief, state as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration based upon my own personal knowledge except for those portions specified as being otherwise. I am making this declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. I am a Senior Vice President of Deloitte Restructuring Inc. ("Deloitte"), the court-appointed Monitor and Foreign Representative of SimEx Inc., Iwerks Entertainment, Inc. ("Iwerks"), and SimEx-Iwerks Myrtle Beach, LLC ("SIMB") (in those capacities, the "Foreign Representative"). I am familiar with the above-captioned debtors (collectively, the "Debtors" or

---

[1] The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is: SimEx Inc. ("SimEx") (5222). The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Iwerks Entertainment, Inc. ("Iwerks"), (9361) and SimEx-Iwerks Myrtle Beach, LLC ("SIMB") (8417). The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "SimEx"). The Debtors' executive headquarters are located at: 210 King St East, 600, Toronto, Ontario, Canada, M5A 1J7.

"SimEx"), whose reorganization proceedings (the "CCAA Proceedings") are currently pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "CCAA").

3. I submit this declaration in support of: (a) the official form chapter 15 petitions for the Debtors (the "Voluntary Petitions") commencing the Debtors' chapter 15 cases (the "Chapter 15 Cases"); (b) the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition"); (c) the *Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"); (d) the *Motion for Order (I) Directing Joint Administration of Cases Under Chapter 15 of the Bankruptcy Code and (II) Authorizing Foreign Representative to File Consolidated Lists of Information Required by Bankruptcy Rule 1007(A)(4)* (the "Joint Administration Motion"); and (e) the *Motion for Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* (the "Notice Procedures Motion").

I. **The Debtors' Business**

4. The Debtors operate a single, united business enterprise specializing in "4D" motion rides and cinematic attractions. They operate in the "theatre attraction" space and rely heavily, if not exclusively, on tourism.

5. The Debtors have suffered losses primarily due to the COVID-19 pandemic ("COVID") and the associated lockdowns, and a slower-than-expected return to pre-COVID business levels. In addition, the Debtors had invested significant time and resources into projects that have been delayed or terminated coming out of COVID.

6. As a result, the Debtors are currently experiencing a liquidity crisis and will be unable to satisfy go-forward obligations such as payroll, rent, and licensing fees without the protections afforded by the CCAA, including immediate access to interim funding.

7. The Debtors are headquartered and managed out of Toronto, Ontario and operate out of five leased facilities located in Canada and the US. The US operations are reliant on the Canadian parent to continue in business. The Debtors currently have seventy-six (76) employees.

8. Iwerks is a wholly-owned subsidiary of SimEx. Iwerks is incorporated under the laws of the State of Delaware and has operations in Los Angeles, California and Baltimore, Maryland.

9. SIMB is a wholly-owned subsidiary of Iwerks. SIMB is incorporated under the laws of the State of South Carolina and has operations in Myrtle Beach, South Carolina.

10. The Debtors have cash in bank accounts, contractual relationships, licenses, employees and business operations in the United States.

**II.      Necessity of CCAA and Chapter 15 Proceedings**

11. The Debtors are insolvent. They are indebted to their secured creditors in the approximate amount of USD $16,000,000 and to their unsecured creditors in excess of USD $7,000,000. More importantly, the Debtors are unable to meet their obligations as they become due. The Debtors require the protection from their creditors afforded by the CCAA and Chapter 15 to bring stability to the business, allow the Debtors to immediately access interim funding and implement the CCAA Sale and Investment Solicitation Process ("SISP"), which is designed to serve the interests of all stakeholders.

12. The Debtors have been operating at net losses for each of the past three years. In each year, they have recorded annual losses of approximately USD $3,000,000.

13. With the assistance of Deloitte, the Debtors have prepared an extended cash flow forecast through May 3, 2024. Without an immediate injection of funds, the Debtors are at risk of having insufficient cash to sustain operations through the week ending January 26, 2024; and, they will have insufficient funds beyond such date.

14. The Debtors, in consultation with their senior secured lender, Royal Bank of Canada and Deloitte, as Monitor, have determined that the best path forward to maximize value for their stakeholders is through a court-supervised SISP under the CCAA in conjunction with the protection afforded by these Chapter 15 proceedings.

15. Deloitte has provided the Debtors with guidance and assistance in the commencement of the CCAA Proceedings. As a result, Deloitte has developed critical knowledge about the Debtors, their business operations, financial challenges, strategic initiatives and restructuring efforts to date.

16. Deloitte has extensive experience acting as monitor in CCAA proceedings and was duly appointed by the Canadian Court to act as the Monitor and Foreign Representative for the Debtors.

17. In light of the foregoing, the Debtors determined to seek relief and protection under the CCAA in Canada and chapter 15 in the United States to preserve enterprise value, obtain financing to satisfy their necessary expenses, and to conduct an orderly investment and sale process through the SISP. The Debtors, the Monitor and the Debtors' senior secured lender (RBC) believe that this proposed course of action constitutes the best approach to maximize value of the Debtors' assets under the circumstances.

18. If the Debtors' creditors were to enforce their rights, it would be both disruptive to the planned SISP and potentially destructive to the Debtor's business and value. In particular, the

value and continuity of the US business contracts is critical to the Debtors' enterprise and would be jeopardized and at risk if such contracts were the subject of the exercise of remedies.

### III. The CCAA Proceedings

19. On January 19, 2024, the Debtors commenced the CCAA Proceedings with the Canadian Court pursuant to the CCAA with the goal of pursuing the SISP. On January 19, 2024, the Canadian Court conducted an initial hearing in the CCAA Proceedings (the "Initial CCAA Hearing") and entered an initial order (the "Initial CCAA Order").

20. The Initial CCAA Order provides for the appointment of Deloitte as Monitor and the enhancement of the Monitor's power. Initial CCAA Order, ¶¶ 22-23.

21. The Initial CCAA Order also includes the following "stay" provisions to be in force during the Stay Period:

> a. THIS COURT ORDERS that until and including January 29, 2024, or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced or continued against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.
>
> b. THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower an Applicant to carry on any business which such Applicant is not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

    c.    THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honor, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, license, sublicence, authorization or permit in favor of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

    d.    THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with the Applicant or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

    e.    THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

Initial CCAA Order, ¶¶ 13-16, 18.

22.    Further, the Initial CCAA Order also approved the DIP Loan in accordance with the DIP Term Sheet between the Debtors and the DIP Lender, the DIP Lender's Charge, the

Administration Charge, and the D&O Charge, subject to limited application during the Stay Period.

23. Finally, the Initial CCAA Order expressly requests that courts in the United States recognize the CCAA Proceedings and grant foreign representative status to the Monitor to aid and assist the Canadian Court in carrying out the terms of the Initial CCAA Order. Paragraphs 52 and 53 of the Initial CCAA Order provide as follows:

> THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicant and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicant and the Monitor and their respective agents in carrying out the terms of this Order.
>
> THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Applicants to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1530, as amended.

*Id.* at ¶¶ 52-53.

24. The Canadian Court did not approve the SISP process and procedures at the Initial CCAA Hearing but deferred that matter to the Comeback Hearing scheduled for January 29, 2024 (the "Comeback Hearing"). At the Comeback Hearing, the Debtors will ask the Canadian Court

to grant an amended and restated initial order which would, *inter alia*, extend the Stay Period and approve the SISP.

25. I believe recognition of the CCAA Proceedings will not undermine the rights that United States creditors typically enjoy in a chapter 11 proceeding, as affected creditors will have the opportunity to the participate in the CCAA Proceedings under the supervision of the Canadian Court. The robust noticing procedures provided for under the Initial CCAA Order (*see id*. at ¶ 45), as well as those provided for in the Notice Procedures Motion filed simultaneously herewith will ensure that United States creditors receive timely and effective notice of both the CCAA Proceedings and these proceedings.

**IV.  Appointment as Foreign Representative and Basis for Determination That CCAA Proceedings are Foreign Main Proceedings**

26. As set forth above, in the Initial CCAA Order, the Canadian Court authorized Deloitte to seek recognition of the CCAA Proceedings under chapter 15 of the Bankruptcy Code and appointed Deloitte as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code for purposes of the CCAA Proceedings.

27. It is my understanding that for these reasons, Deloitte satisfies the definition of a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code.

28. SimEx is the parent company and directs all activities of the business enterprise. SimEx is incorporated under the laws of the Province of Ontario and its executive headquarters is located in Toronto, Ontario. Although the Debtor has valuable operations in the United States, the headquarters and chief place of business for the Debtors is Ontario. All strategic and key operational decisions are made by senior management in Toronto, where more than sixty percent 60% of the Debtors' employees are also located.

29. Two of the three Debtors (Iwerks and SIMB) are U.S. entities and one (Iwerks) is incorporated in Delaware. SimEx has property in Delaware as the parent of Iwerks in the form of corporation stock formed in Delaware. SIMB is a wholly owned operating subsidiary of a Delaware corporation (Iwerks). The Debtors maintain bank accounts with Wells Fargo in the United States, and have contractual relationships, licenses, employees and business operations in the United States, specifically in South Carolina, California and Maryland.

30. Therefore, on the Petition Date, Deloitte filed the Verified Petition pursuant to sections 1504 and 1515 of the Bankruptcy Code commencing these Chapter 15 Cases in the District of Delaware, seeking recognition of the CCAA Proceedings as "foreign main proceedings," as such term is defined in section 1502(4) of the Bankruptcy Code, and seeking other necessary or appropriate relief in support of the CCAA Proceedings. I have been informed and understand that the Bankruptcy Code provides for recognition of a foreign proceeding as a "foreign main proceeding" if such foreign proceeding is a "foreign proceeding" pending in a country where the debtor has "the center of its main interests." *See* 11 U.S.C. § 1517(b)(1).

31. I have been informed that the CCAA Proceedings are "foreign proceedings" as they are a collective judicial proceeding authorized and supervised by the Canadian Court under the CCAA and pursuant to the Initial CCAA Order. It is my understanding that for these reasons, the CCAA Proceedings qualify as "foreign proceedings" as that term is defined in Section 101(23) of the Bankruptcy Code. In compliance with Section 1515(b) of the Bankruptcy Code, a certified copy of the Initial CCAA Order, which commenced the CCAA Proceedings, is attached to the Petitions.

32. In addition, I believe that each of the Debtors have their "center of main interests", within the meaning of section 1502(4) and 1516(c) of the Bankruptcy Code, in Toronto, Ontario,

Canada. The Debtors' parent company, SimEx, is a Canadian corporation incorporated in Ontario that has a 100 percent direct ownership interest in Iwerks, which has a 100 percent direct ownership interest in SIMB. Additionally, the Debtors are an integrated enterprise, and the Debtors' administrative, support, and other functions are performed on a centralized basis and managed in Canada.

33. Based on these facts, I believe that recognition of the CCAA Proceedings as foreign main proceedings is warranted.

34. I also believe recognition of Deloitte as the Debtors' "foreign representative" and recognition of the CCAA Proceedings as "foreign main proceedings" are consistent with the purpose of chapter 15 and will allow the Debtors to pursue their objectives in the CCAA Proceedings in the most efficient and effective manner without negatively impacting their creditors' rights.

35. The Debtors are affiliates of each other and each of their cases were filed on the Petition Date in this court (the "Bankruptcy Court"). Accordingly, I believe that joint administration of these Chapter 15 Cases for procedural purposes only, as well as permitting the filing of consolidated lists of the information required by Bankruptcy Rule 1007(a)(4), will be an administrative convenience for the Bankruptcy Court, the court clerk's office, and interested parties.

36. Further, I believe that noticing procedures are appropriate in light of the significant number of creditors, potential creditors, and other parties of interest, all of whom need to be provided with, among other things, notice of the entry of the provisional order, the proposed final order, the recognition objection deadline, and the recognition hearing. The Foreign Representative has prepared a form of notice advising of these and related matters (the "Notice of Recognition

Hearing"), a copy of which is annexed to the Notice Procedures Motion. Under the facts and circumstances of the Debtors' Chapter 15 Cases, I submit that service of the Recognition Hearing Notice in the manner proposed in the Notice Procedures Motion will provide those parties identified as the Notice Parties in the Notice Procedures Motion with due and sufficient notice of the relief requested in the Recognition and Relief Motion and associated objection deadline and hearing dates.

37. Also, for the reasons set forth in the Verified Petition, I submit that recognition of the CCAA Proceedings is necessary and appropriate for the benefit of the Debtors, their creditors, and other parties in interest.

### V. Consolidated Statement Pursuant to Section 1515 of the Bankruptcy Code

38. I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, as follows:

> (a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
>
> (b) A petition for recognition shall be accompanied by—
>
> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>
> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>
> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
>
> (c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

11 U.S.C. § 1515.

39. Pursuant to section 1515(b) of the Bankruptcy Code, the Initial CCAA Order, in which the Canadian Court appointed the Foreign Representative, is attached to each of the Voluntary Petitions. The Canadian Court issued the Initial CCAA Order appointing Deloitte as the Foreign Representative and authorizing Deloitte to commence these Chapter 15 Cases.

40. Pursuant to section 1515(c) of the Bankruptcy Code, I am aware of the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code, and I believe the CCAA Proceedings are "foreign proceedings" as defined therein. I am aware of no other foreign proceedings with respect to the Debtors.

### A. List of Administrators of CCAA Proceedings

41. In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), the Debtors, as directed by their Board and the Foreign Representative, shall maintain control of and be authorized to administer the CCAA Proceedings. The service address for all of the Debtors in these Chapter 15 Cases is: 210 King St East, 600, Toronto, Ontario, Canada, M5A 1J7. I am aware of no other persons or bodies authorized to administer the CCAA Proceedings on behalf of the Debtors.

### B. Provisional Relief

42. Through the Provisional Relief Motion, provisional relief is sought with respect to each of the Debtors against the following parties: (a) the senior secured lender; (b) counterparties to certain of the Debtors' executory contracts and unexpired leases; (c) litigation counterparties; and (d) other creditors, as set forth on the *Consolidated Verified List Pursuant to Fed. R. Bankr. P. 1007(a)(4), 1008, and 2002(q)* attached to the Voluntary Petitions.

### C. Parties to Pending Litigation in U.S.

43. In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), the Debtors have attached to the Voluntary Petitions a list of all parties to litigation pending in the

United States in which the Debtors are a party at the time of the commencement of the Chapter 15 Cases.

**VI.     Statement in Support of Provisional Relief Motion**

44.     Deloitte commenced these Chapter 15 Cases to provide the Debtors with the breathing room and stability necessary to implement the SISP, including by seeking certain provisional relief between the Petition Date and the Bankruptcy Court's entry of the proposed order recognizing the CCAA Proceedings. Such provisional relief includes, among other things, the Bankruptcy Court's immediate ordering of the application of sections 361, 362, 364 and 365(e) of the Bankruptcy Code to these Chapter 15 Cases. Although the Debtors received relief from certain potential events of default pursuant to the Initial CCAA Order, the Debtors may be exposed to potentially adverse action in the United States by certain creditors and other parties in interest (including contract counterparties) who may disregard the stay imposed under the Initial CCAA Order.

45.     Additionally, the Debtors' commencement of the CCAA Proceedings and these Chapter 15 Cases are, or may be asserted to be, triggers, events of default, and subsequent cross-defaults under certain of the Debtors' unexpired leases and executory contracts. Further, certain of the Debtors' executory contracts and unexpired leases contain provisions permitting termination upon the Debtors' filing of a case under any section or chapter of the Bankruptcy Code. The relief requested by the Debtors is required to prevent individual creditors or contract counterparties acting to frustrate the purpose of the CCAA Proceedings by disregarding the Initial CCAA Order, the foremost of which is the fair and efficient administration of the CCAA Proceedings and SISP to maximize the value for all creditors.

46.     Accordingly, I believe that the provisional relief requested in the Provisional Relief Motion is necessary and appropriate under the circumstances.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my information and belief.

Executed on this 25th day of January 2024
Toronto, Ontario
Canada

Deloitte Restructuring Inc., solely in its capacity
as court-appointed Foreign Representative
and not in its individual or corporate capacity


BY: */s/ Jorden Sleeth*_____
      Jorden Sleeth, Senior Vice President

4895-6435-0112, v. 2