## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| SIMEX INC., et al.,[1] | Case No. 24-10083 (TMH) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

### FOREIGN REPRESENTATIVES' MOTION FOR PROVISIONAL RELIEF PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE

Deloitte Restructuring Inc. ("Deloitte"), in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), which are the subject of jointly-administered proceedings (the "CCAA Proceedings") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), submits this motion (the "Motion"), pursuant to sections 105(a), 1517, 1519 and 1521 of title 11 of the United States Code (the "Bankruptcy Code") to the United States Bankruptcy Court for the District of Delaware (the "Court"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A**, granting provisional relief (the "Provisional Relief Order"), and specifically, rendering sections 361, 362, 364 and 365 of the Bankruptcy Code applicable with respect to the Debtors and their property that is within the territorial jurisdiction of the United States pending recognition of the CCAA Proceedings.

---

[1] The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is: SimEx Inc. ("SimEx") (5222). The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Iwerks Entertainment, Inc. ("Iwerks"), (9361) and SimEx-Iwerks Myrtle Beach, LLC ("SIMB") (8417). The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "SimEx"). The Debtors' executive headquarters are located at: 210 King St East, 600, Toronto, Ontario, Canada, M5A 1J7.

**PRELIMINARY STATEMENT**

1.      In support of the requested relief, the Foreign Representative respectfully incorporates the following herein by reference: the (a) *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 4] (the "Verified Petition"); (b) *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 5] (the "Deloitte Declaration"); and (c) *Declaration of Roger Jaipargas in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Jaipargas Declaration").[2]   The Foreign Representative further represents to the Court as follows:

2.      On the date hereof, the Foreign Representative filed the Verified Petition, seeking, among other things, recognition of its status as the Debtors' foreign representative, recognition of the CCAA Proceedings as "foreign main proceedings" under section 1517 of the Bankruptcy Code, and certain related relief.  Entry of an order recognizing the CCAA Proceedings and granting the relief requested in the Verified Petition is necessary to provide the Debtors with the breathing room and stability necessary to conduct a process for the investment in, or sale of, the Debtors' business as a going concern (the "SISP").  Further,  the  relief available through chapter 15 will prevent disruption of the CCAA Proceedings, which are intended to facilitate the SISP for the benefit of all stakeholders.

3.      To maintain the status quo, and to provide the Debtors with the breathing room and stability necessary to implement the SISP, the Foreign Representative now seeks certain provisional

---

2 Capitalized terms not otherwise defined herein shall have their meaning as set forth in the Verified Petition, Deloitte Declaration or Jaipargas Declaration, as applicable.

4882-8738-1152, v. 2

relief between the date hereof and this Court's entry of the Foreign Representative's proposed order recognizing the CCAA Proceedings, and requests, among other things, that this Court immediately order the application of sections 361, 362, 364, and 365 of the Bankruptcy Code to these Chapter 15 Cases. Although the Debtors received relief from certain potential events of default pursuant to the Initial CCAA Order (as defined below), the Debtors may be exposed to potentially adverse action in the United States by certain creditors and other parties in interest (including contract counterparties) who may otherwise disregard the stay imposed under the Initial CCAA Order.

4.      The provisional relief requested by the Debtors, which is generally afforded to debtors in chapter 15 recognition proceedings, is required to prevent individual creditors from acting to frustrate the purpose of the CCAA Proceedings and SISP by disregarding the Initial CCAA Order.

5.      Indeed, chapter 15 of the Bankruptcy Code is intended to prevent precisely these negative effects on a debtor's restructuring in a foreign country by complementing and facilitating corporate rehabilitation in another country. Therefore, and for reasons further described herein, the Foreign Representative respectfully submits that provisional relief is urgently needed to prevent disruption to the CCAA Proceedings, conserve value of the Debtors' assets, prevent harm to the Debtors' business enterprise, and support the SISP.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Foreign Representative confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      These Chapter 15 Cases have been properly commenced pursuant to section 1504 of

the Bankruptcy Code by the filing of petitions for recognition of the CCAA Proceedings under section 1515 of the Bankruptcy Code.

8.      Venue is proper pursuant to 28 U.S.C. § 1410. Two of the three Debtors are incorporated in the U.S., one of which is incorporated in Delaware (Iwerks) and one of which holds 100% of the stock of Iwerks (SimEx).  Additionally, as more particularly described below, the Debtors have cash held in U.S. bank accounts, tangible assets, corporation stock, leasehold interests, and/or contract rights in the United States.

9.      The bases for the relief requested herein are sections 105(a), 361, 362, 364, 365, 1519, and 1521 of the Bankruptcy Code and rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### I.     The Debtors' Business

10.     The Debtors operate a unique single business enterprise in the specialized "4D" motion rides, cinematic attractions, "theatre attractions" and "motion rides" space.

11.     The Debtors' products are featured in theatres and motion rides at tourist attractions in Canada and the US, as well as other places in the world.  The Debtors have produced 4D films and have an active catalogue of more than 125 films available for license.  The Debtors design and build theatre attraction facilities under contract.  They also manage and operate theatre attraction facilities.

12.     The Debtors have a diverse set of customers which license and operate theatre attractions, in some cases for their own facilities and in other cases as service providers to third-parties. Although the Debtors have longstanding relationships with various customers, in the majority of cases, each film/project is the subject of a stand alone agreement for one or more of the services the Debtors provide. In the case of most of Iwerks' co-ventures, the co-venture partner is obligated to license the Debtors' films for the duration of the co-venture agreement.

4

13.     The Debtors have longstanding relationships with different film studios as suppliers of intellectual property. These dealings can be categorized broadly as follows:

(a) *Licensing of Existing Films* – The Debtors will license from studio's existing films (often back catalogue titles) and edit such films to suit a 4D theatre attraction. This includes both enhancing thematic elements of such films and shortening them for the purposes of a theatre attraction "ride." In turn, the Debtors sublicense such films to end-users and pay royalties to the subject studio; and

(b) *Original Licensed Content* – Although not as common as the licensing of existing films, the Debtors will from time to time create original content.

14.     The Debtors' key studio partners include Warner Brothers and the Walt Disney Company, each of whom are owed royalties.

**II.     Cash Management**

15.     In the ordinary course of business, the Debtors maintain accounts for SimEx through RBC in Canada, including a CAD Account, USD Account and distinct foreign exchange account for other currencies. In the US, independent accounts are maintained for Iwerks and SIMB through Wells Fargo. All finance and accounting functions of the business enterprise are directed by SimEx and, specifically, SimEx's CFO.  As discussed below, pursuant to the Initial CCAA Order, the Monitor has been appointed to, among other things, monitor the Debtors' receipts and disbursements.

### III.   The CCAA Proceedings

16.     On January 19, 2024, the Debtors commenced the CCAA Proceedings under the CCAA with the goal of effectuating the SISP. On January 19, 2024, the Canadian Court entered an initial order (the "Initial CCAA Order"). A true and correct copy of the Initial CCAA Order is attached to the Voluntary Petition.

17.     The Initial CCAA Order appointed Deloitte pursuant to the CCAA, as the Monitor and an officer of the Canadian Court, to monitor the business and financial affairs, and receipts and disbursements, of the Debtors with the powers and obligations set out in the CCAA or set forth in the Initial CCAA Order.  The Initial CCAA Order ordered that the Debtors and their shareholders, officers, directors, and assistants advise the Monitor of all material steps taken by the Debtors pursuant to the Initial CCAA Order and co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.  Initial CCAA Order, ¶ 22-23.

18.     The Initial CCAA Order imposed a stay until and including January 29, 2024 (the "CCAA Stay Period") of (a) the exercise of rights and remedies against the Debtors or the Monitor, (b) the termination of, or failure to perform under, any contract, or lease, or discontinuance or termination of supply of goods or services to, the Debtors, or (c) the commencement or continuance of any proceeding or enforcement process in any court or tribunal, against the Debtors, the Monitor, or the Debtors' directors or officers.  Initial CCAA Order, ¶¶ 13-16, 18.

4882-8738-1152, v. 2

IV.     **Need for Chapter 15 Provisional Relief.**

19.     Absent the provisional relief requested, the commencement of the CCAA Proceedings and Chapter 15 Cases could have severe adverse consequences to the Debtors.  First, if the Debtors' secured lenders Royal Bank of Canada ("RBC") and BDC Capital Inc. ("BDC" and, along with RBC, the "Secured Lenders") were to enforce their rights under their loan agreements, it would be extremely destructive to the Debtors' business and value. In particular, the value and continuity of Debtors' executory contracts would be jeopardized and at risk in enforcement proceedings.

20.     Second, a substantial portion of the Debtors' material assets are located in the United States.  Iwerks, a wholly-owned subsidiary of SimEx, is the sale and service arm of the business enterprise, and is based in Los Angeles and Baltimore.  SIMB, the wholly-owned subsidiary of Iwerks, was incorporated for the single purpose of operating a licensed attraction in Myrtle Beach, South Carolina known as "The Simpsons in 4d."

21.     Many of the Debtors' essential contracts, licenses and leases are related to projects in the United States— representing substantial value that could be at risk absent the protections afforded to the Debtors under chapter 15 of the Bankruptcy Code. Failure to grant the Debtors the necessary protections afforded a chapter 15 debtor would severely jeopardize the Debtors' efforts to continue as a going concern and consummate a successful SISP.

22.     The Debtors' commencement of the CCAA Proceedings and these Chapter 15 Cases may be asserted to trigger an event of default under certain of the Debtors' critical executory contracts, which contain arguably unenforceable provisions permitting termination upon the Debtors' filing of a case under any section or chapter of the Bankruptcy Code.   The counterparties to those critical U.S. contracts include Walt Disney Company and Warner Brothers.

23.     The commencement of the CCAA Proceedings could also trigger, or be asserted to trigger, an event of default under the leases for premises on which the Debtors operate their 4D

attractions, as well as under licenses from studios of their existing films (often back catalogue titles) to use and edit such films to suit a 4D theatre attraction.   The termination of any of these executory contracts, licenses, or leases could materially harm the success of the SISP, and materially diminish the ultimate sale or investment transaction proceeds.

24.     The Initial CCAA contemplates that the Monitor will be the foreign representative of the Debtors in connection with the Verified Petition.  The Initial CCAA Order provides, in relevant part, that:

> the Monitor is authorized and empowered to act as a representative
> in respect of the within proceedings for the purpose of having [the
> CCAA] proceedings recognized in a jurisdiction outside Canada,
> including acting as a foreign representative of the [Debtors] to,
> apply to the United States Bankruptcy Court for relief pursuant to
> Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-
> 1530, as amended.

25.     For all of the above reasons, the provisional relief described below is necessary to preserve the value of the Debtors' critical contracts, licenses, and leases, stay the exercise of remedies by creditors and contract counterparties against the Debtors' U.S.- based assets, and to provide the Debtors with the breathing room and stability necessary to implement the SISP.

**V.     The DIP Facility**

26.     In order to finance the Debtors' working capital requirements and other general corporate purposes and capital expenditures during the pendency of the CCAA Proceedings, the Canadian Court entered the Initial CCAA Order authorizing the Debtors to obtain loans (the "DIP Loans") pursuant to a credit facility (the "DIP Facility") on the terms and conditions set forth in the term sheet between the Debtors and the DIP Lender, dated as of January 17, 2024 (the "DIP Term Sheet"), to be further memorialized under credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (the "Definitive Documents").  The DIP Facility was approved, on an interim basis, by the Canadian Court, and the Foreign Representative seeks recognition and enforcement of the approvals granted

8

under the Initial CCAA Order.

27.     The DIP Term Sheet provides, in pertinent part, for advances to the Debtors up to a maximum aggregate principal amount not to exceed $200,000 during the initial 10-day CCAA Stay Period imposed by the Initial Order, and a maximum of $600,000 thereafter, to fund the Debtors' operations, pay the administrative and legal fees related to the CCAA Proceedings and these Chapter 15 Cases, and other approved DIP Charges (including the Administration Charge, the DIP Lender's Charge, and the D&O Charge). *See* Initial CCAA Order ¶¶ 31, 34, and 43.

28.     The Initial CCAA Order granted the Administration Charge, the DIP Lender's Charge, and the D&O Charge (each as defined below and, collectively, the "DIP Charges") and ordered that the DIP Charges shall rank senior in priority to all other security interests, trusts, liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (collectively, "Encumbrances") in favor of any individual, firm, corporation, governmental body or agency, or any other entities, notwithstanding the order of perfection or attachment (See Initial CCAA Order ¶¶ 14, 20. 30, 34, 37, 39, 43) and that the DIP Charges shall have, among themselves, the following order of priority:

(a)     *first*, a charge (the "Administration Charge") in favor of the Monitor, counsel to the Monitor, US counsel to the Monitor, and the Debtors' counsel to secure payment of their professional fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the issuance of the Initial CCAA Order in respect of the CCAA Proceedings, not to exceed $390,000 during the Interim Period.   *See* Initial CCAA Order ¶¶ 30, 37, 43.

(b)     *second*, a charge (the "DIP Lender's Charge") in favor of the DIP Lender to secure the amounts borrowed under the DIP Facility, not to exceed $200,000 during the Interim Period.  *See*, Initial CCAA Order ¶¶ 34, 37, 43.

9

(c)     *third*, a charge (the "Directors' Charge") in favor of the Debtors' directors and officers in an amount not to exceed an aggregate amount of USD $300,000, as security for the Debtors' obligation to indemnity their directors and officers against obligations and liabilities that they may incur as directors or officers after the commencement of the CCAA proceedings (excluding any obligation or liability incurred as a result of the director's or officer's gross negligence or willful misconduct), not to exceed $230,000 during the Interim Period. *See* Initial CCAA Order ¶¶ 20, 37, 43.

29.     The Initial CCAA Order further ordered that the Debtors shall not grant any Encumbrances over any Property that rank senior in priority to, or *pari passu* with, any of the Directors' Charge, the Administration Charge or the DIP Lender's Charge, unless the Debtors also obtain prior written consent of the Monitor, the DIP Lender and the beneficiaries of the Directors' Charge and the Administration Charge, or further Order of the Canadian Court. *See* Initial CCAA Order ¶ 40.

## VI.  The Amended and Restated Initial CCAA Order

29.     On January 24, 2024, the Debtors submitted the proposed Amended and Restated Initial CCAA Order to the Canadian Court.[3]  The following is a summary of the relief granted with respect to the stay, the DIP Financing, and the SISP in the Initial CCAA Order and the anticipated relief to be granted in the Amended and Restated Initial CCAA Order:

---

[3] A copy of the proposed Amended and Restated Initial CCAA Order with a blackline showing changes from the Initial CCAA Order is filed simultaneously herewith.

| Relief | Initial Order ("IO") | Proposed Amended and Restated Initial Order ("ARIO") |
|---|---|---|
| Stay of Proceedings | 10 days – January 19 to 29, 2024 | 95 days – January 29 to May 3, 2024 |
| Administration Charge (First priority)[4] | $390,000 | $500,000 |
| DIP Charge (Second priority) | $200,000 | $600,000 |
| Directors Charge (Third priority) | $230,000 | $300,000 |
| SISP | No relief, Court advised of SISP, but not approved | Approval of SISP, implement SISP January 29 to May 3 (outside date) |

## RELIEF REQUESTED

30.     Pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code, the Foreign Representative respectfully requests that the Court enter the Provisional Relief Order, substantially in the form attached hereto as **Exhibit A**, granting the following provisional relief pending recognition of the CCAA Proceedings:

      **a.**     Recognition and enforcement in the United States, on a provisional basis, of the Initial CCAA Order (and, once entered, the amended and restated Initial CCAA Order (the "Amended and Restated Initial CCAA Order")) providing for, among other things:[5]

           i.     staying all proceedings and remedies taken or that might be taken in respect of the Debtors or any of their property until the Court rules on the Debtors' Chapter 15 Petitions to the same extent provided in the Initial CCAA Order;

           ii.     authorizing the Debtors' use of their existing cash management system subject to any limitations imposed by the Canadian Court;

           iii.     approving the DIP Facility with the DIP Lender subject to the terms of the DIP Term Sheet and, solely to the extent approved by the Canadian Court, (a) with respect to the DIP Charges, any additional advances made in respect of the DIP Facility as authorized by the Initial CCAA Order and (b) the SISP procedures; and

---

[4] Charges are in USD and listed in their priority ranking.  The amount sought in the ARIO is the total amount of the proposed charges.
[5] Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed to them in the Initial CCAA Order.

       iv.    granting the Administration Charge, DIP Lender's Charge, and Directors' Charge to the same extent provided in the Initial CCAA Order.

**b.**    Recognizing the Foreign Representative as the representative of the Debtors with full authority to administer the Debtors' assets and affairs in the United States.

**c.**    Finding Section 361 of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

**d.**    Finding that, until the Court rules on the Debtors' Chapter 15 Petitions, Section 362 of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States. For the avoidance of doubt and without limiting the generality of the foregoing, the Provisional Relief Order shall impose a stay within the territorial jurisdiction of the United States of:

    i.    The commencement or continuation, including the issuance or employment of process of, any judicial, administrative, or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative, or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof, or to exercise any control over the Debtors' assets located in the United States except as authorized by the Foreign Representative in writing;

    ii.    The creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against the Debtors' property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express consent of the Foreign Representative;

    iii.    Any act to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases; and

    iv.    The setoff of any debt owing to any of the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases against any claim against of the Debtors.

4882-8738-1152, v. 2

e.  Finding Section 364 of the Bankruptcy Code applicable with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

f.  Recognizing the effectiveness of the Initial CCAA Order insofar as it (a) authorized the Debtors to obtain and borrow under the DIP Term Sheet and (b) granted liens and security interests in the Debtors' assets located within the territorial jurisdiction of the United States in respect of, and in accordance with, the Administration Charge, DIP Lender's Charge, and Directors' Charge (collectively, the "DIP Charges").[6]

g.  Finding that for counterparties to the Debtors' executory contracts and unexpired leases, section 365(e) of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

h.  Finding specifically that, until the Court rules on the Debtors' Verified Petition, any and all counterparties to executory contracts with the Debtors are prohibited from taking any steps to cancel, terminate, or modify any such contract.

i.  Finding that, until the Court rules on the Debtors' Verified Petition, any and all licensors or licensees are hereby prohibited from taking any steps to cancel, terminate, or modify any license to which one or more of the Debtors is a party for any reason, including non-payment of royalties and/or due to any ipso facto clause described by Section 365(e)(1) of the Bankruptcy Code.

j.  Finding that, until the Court rules on the Debtors' Verified Petition, any and all landlords or other parties with a lease of premises to the Debtors located within the US are hereby prohibited from: taking any steps to cancel, terminate, or modify any lease for any reason, including non-payment of rent and/or due to any ipso facto clause described by Section 365(e)(1) of the Bankruptcy Code; enforcing any "landlord lien", possessory lien or similar lien against any property of the Debtor; changing the locks or codes on any of the Debtors' premises; or commencing or continuing any eviction or similar proceedings; and

k.  Finding that the Foreign Representative shall have the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of United States Courts over the Foreign Representative in accordance with section 1510 of the Bankruptcy Code and the granting of

---

[6] The Motion does not request that the Court make any findings pursuant to Section 364(d)(1) of the Bankruptcy Code, or otherwise, with respect to the merits of the DIP Facility in these Chapter 15 Cases filed in the United States. The Motion seeks solely recognition of the effectiveness of the Initial CCAA Order as to the DIP Term Sheet and DIP Charges, and solely on a provisional basis until this Court rules on the Debtors' Chapter 15 Petitions and recognition of the CCAA Proceedings.

4882-8738-1152, v. 2

additional relief in accordance with sections 1519(a)(3) and 1521 of the Bankruptcy Code.

l.   Finding that notwithstanding any provision in the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Foreign Representative is authorized and empowered, and may, in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order.

## **BASIS FOR RELIEF**

31.     The Foreign Representative has contemporaneously filed the Verified Petition seeking recognition and a ruling that the CCAA Proceedings are foreign main proceedings under section 1517 of the Bankruptcy Code.  Section 1519 of the Bankruptcy Code permits the Court "[f]rom the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).  Sections 1519(a)(1)-(3) of the Bankruptcy Code define the scope of available provisional relief, which includes:

a.   staying execution of the debtor's assets;

b.   entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative, or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

c.   any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

32.     The Foreign Representative seeks imposition of sections 361, 362, 364, and 365(e) of the Bankruptcy Code for the purpose of maintaining the *status quo* until the Court rules on the Verified Petition.  Accordingly, the Foreign Representative seeks provisional relief under sections

105(a) and 1519 of the Bankruptcy Code.  The Foreign Representative intends to seek continuation of the stay via section 1521(a)(1) of the Bankruptcy Code upon the granting of foreign main recognition.

33.     The provisional relief requested here is an "effective mechanism" to implement the chapter 15 policies of promoting cooperation between courts of the United States and courts of foreign countries involved in cross-border restructuring cases.  The "fair and efficient administration of cross border [cases] that protects the interest of all creditors, and other interested entities," including the Debtors, is essential to the "protection and maximization of the value of the [Debtors'] assets." 11 U.S.C. § 1501(a).

34.     Furthermore, the provisional relief sought herein is of a type frequently granted in chapter 15 cases.  Bankruptcy courts in the United States have routinely imposed the section 362 stay or ordered similar relief to maintain the *status quo* pending recognition or disposition of foreign proceedings in ancillary cases under both chapter 15 and section 304 of the Bankruptcy Code, including in respect of recognition proceedings that relate to restructurings of corporations in Canadian courts. *See, e.g., In re NextPoint Financial Inc.*, Case No. 23-10983 (Bankr. D. Del. July 27, 2023) (granting provisional relief making section 362 of the Bankruptcy Code applicable on a limited basis); *In re Acerus Pharms. Corp.*, Case No. 23-10111 (Bankr. D. Del. January 31, 2023) (same); *In re Yatsen Grp. of Cos. Inc.*, Case No. 21-10073 (Bankr. D. Del. January 27, 2021) (same); *In re Hematite Holdings Inc.*, Case No. 20-12387 (Bankr. D. Del. Sept. 23, 2020) (same); *In re CDS U.S. Holdings, Inc.*, Case No. 20-11719 (Bankr. D. Del. July 2, 2020); *In re DAVIDsTEA Inc.,* Case No. 20-11802 (Bankr. D. Del. July 9, 2020) [D.I. 21] (same); *In re Lone Pine Res. Inc.*, No. 13-12487 (Bankr. D. Del. Sept. 26, 2013) [D.I. 18] (same); *In re Just Energy Grp. Inc.*, No. 21-30823 (Bankr. S.D. Tex. Mar. 9, 2021) [D.I. 23] (same); *In re Essar Steel Algoma Inc.*, No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [D.I. 35-3] (same).

15

I.    **Provisional Relief Is Urgently Needed to Protect the Debtors' Assets and Restructuring Efforts.**

35.    The provisional relief is urgently needed here to protect the Debtors' assets and to protect the interests of creditors as a whole. *See* 11 U.S.C. § 1519(a). Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap between the time the petition for recognition is filed and the time the court makes a decision on whether a proceeding should be recognized. 11 U.S.C. § 1517(c). Prior to recognition, a chapter 15 debtor is not entitled to the automatic stay or any other provisions of the Bankruptcy Code, which, in this case, necessitates an order granting provisional relief. Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

36.    Without the limited application of section 362, there is a real and significant risk that certain of the Debtors' stakeholders, many of whom have contacts with the United States and are subject to personal jurisdiction of this Court, may commence actions or otherwise exercise remedies in the United States that are more properly the subject of the CCAA Proceedings or that could interfere with the SISP and the Debtors' ability to continue as a going concern.  In particular, the Foreign Representative is concerned that creditors may try to take advantage of the Debtors' connections to the United States to take actions in the United States to interfere with the Canadian Court's ability to adjudicate the SISP, which would not only hinder the orderly administration of the Debtors' affairs but threaten to unravel the orderly process that the Debtors seek to implement pursuant to the CCAA Proceedings.  This risk is precisely what provisional relief under section 1519 of the Bankruptcy Code is intended to address. *See, e.g., In re Petition of Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (finding that, under former section 304 of the Bankruptcy Code, irreparable harm would be

caused by permitting creditors to execute judgments against bond proceeds because it would "diminish the recovery available to other creditors and possibly wreck the reorganization").

37.     Most importantly, as detailed above, counterparties to executory contracts who may not believe they are subject to the Initial CCAA Order, may allege events of default and take actions in the United States based on such alleged events of default, absent the relief requested herein. An action against any of the Debtors at this time will severely impair the Debtors' sale and investment process efforts and potentially result in damage to the enterprise value of their assets and harm to other creditors and other stakeholders.

**II.     The Requested Relief Meets the Standards for a Preliminary Injunction.**

38.     Provisional relief under chapter 15 of the Bankruptcy Code is conditioned on a foreign representative demonstrating that a debtor meets the standards applicable to an injunction. *See* 11 U.S.C. § 1519(e).  In the Third Circuit, that standard requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the requested injunction is denied; (c) granting preliminary relief will not result in greater harm to the nonmoving party; and (d) the public interest favors such relief. *U.S. v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)); *In re Nortel Networks UK Ltd.*, 538 B.R. 699, 704-05 (Bankr. D. Del. 2015) (citing *U.S. v. Bell*, 414 F.3d 474, 478 n.2 (3d Cir. 2005)); *see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted)*; Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted). The Foreign Representative satisfies the applicable standard.

> **a.     There Is a Substantial Likelihood of Recognition of the CCAA Proceedings as a Foreign Main Proceeding and Application of Requested Additional Bankruptcy Code Provisions.**

39.     There is a compelling case for recognition of the CCAA Proceedings as a foreign main proceeding.  The CCAA Proceedings are clearly a "foreign main proceeding", and Deloitte is a

"foreign representative" as those terms are defined in the Bankruptcy Code.  In addition, these Chapter 15 Cases were duly and properly commenced by filing the verified chapter 15 petitions accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules. Upon recognition of the CCAA Proceedings as a foreign main proceeding, section 362 of the Bankruptcy Code will automatically apply in these Chapter 15 Cases pursuant to section 1520(a)(1) of the Bankruptcy Code. 11 U.S.C. § 1520(a)(1).  Moreover, application of section 365(e) on an interim basis, preventing contract counterparties from terminating their prepetition contracts with the Debtors, is consistent with the injunctive relief afforded by the automatic stay under section 362.

**b.      The Debtors Will Suffer Irreparable Harm Absent Provisional Relief.**

40.      Application of provisional relief pursuant to sections 362 and 365(e) of the Bankruptcy Code in these cases is critical to the prevention of irreparable damage to the CCAA Proceedings. These Chapter 15 Cases were commenced for the purpose of obtaining the assistance of this Court in respect of the CCAA Proceedings and to give effect in the United States to the Initial CCAA Order and subsequent orders of the Canadian Court.  As noted in the Deloitte Declaration and in the Verified Petition, the Debtors have assets in the United States, including bank accounts, valuable contracts, licenses and leases.  Unless the Provisional Relief Order is granted and all creditors and counterparties are enjoined, the Debtors face the risk that creditors may take enforcement actions to recover against its United States assets, as well as the risk that contract counterparties may attempt to terminate critical prepetition contracts.  If creditors and other counterparties unilaterally pursue collection or enforcement efforts, such actions could diminish the value of the Debtors' assets and cause significant delay and disruption to the SISP process. The relief requested herein is necessary to protect against these risks.

41.      The purpose of chapter 15 is to provide such protection by, among other things, ensuring that all of a debtor's creditors are enjoined from taking action against the debtor's assets,

4882-8738-1152, v. 2

thereby preventing some creditors from getting an unfair advantage over others. *See* 11 U.S.C. § 1501. A number of courts have recognized the need to provide provisional relief to ensure the orderly distribution of a debtor's assets in a single proceeding and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions. *See, e.g., In re Energy Coal S.P.A*. 582 B.R. 619, 626-27 (Bankr. D. Del. 2018) (stating that harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B*., 825 F.2d 709, 713-14 (2d Cir. 1987) (same); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C*., 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group."); *In re Lines,* 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (stating that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

### c.      Provisional Relief Will Benefit Creditors.

42.      In contrast to the hardships described above, preservation of the *status quo* through imposition of the automatic stay and prevention of contract termination while the Foreign Representative and the Debtors undertake the reorganization process in the CCAA Proceedings will not prejudice creditors. Indeed, creditors as a whole will benefit from such relief.  The relief requested in this Motion is intended to be temporary, extending only through the disposition of the Verified Petition.  Moreover, the Provisional Relief Order specifically provides that any creditor that believes it has been harmed by the provisional relief granted therein may file a motion with the Court seeking relief therefrom. Granting the request for provisional relief actually will benefit the Debtors' creditors because it will ensure the value of the Debtors' assets and business enterprise is preserved, protected, and maximized for the benefit of and fair distribution to all creditors.

4882-8738-1152, v. 2

### d.      Public Interest Favors Granting Provisional Relief.

43.      As noted above, the requested interim relief is consistent with the policies underlying the Bankruptcy Code, including the provision of a breathing spell for a debtor and the equitable treatment of all creditors. Additionally, granting the requested relief is in the public interest because it will facilitate the Debtors' efforts to complete a court-supervised sale and investment process for the benefit of its creditors and other stakeholders—including those in the United States. *See Rehabworks, Inc. v. Lee* (*In re Integrated Health Servs., Inc.*), 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *Am. Film Techs, Inc. v. Taritero* (*In re Am. Film Techs., Inc.*), 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (*quoting Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso* (*In re Gathering Rest., Inc.*), 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)). Moreover, granting provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code. 11 U.S.C. § 1501(a).

44.      For these reasons, courts in this circuit have frequently granted requests for similar provisional relief in chapter 15 cases. *See, e.g., CDS U.S. Holdings, Inc*., No. 20-11719 (CSS) (Bankr. D. Del. July 2, 2020) (order granting provisional relief, including recognition and enforcement of the initial order entered in the CCAA proceeding and conditional recognition and enforcement of the Amended and Restated Initial CCAA Order, and application of sections 362, 364(e) and 365(e)); *In re The Aldo Group, Inc.,* No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) (same); *In re Energy Coal S.P.A*., No. 15-12048 (LSS) (Bankr. D. Del. Oct. 7, 2015) (order granting provisional relief, including application of section 362); *In re Lone Pine Res. Inc*., No. 13-12487 (BLS) (Bankr. D. Del. Sept. 26, 2013) (order granting provisional relief, including recognition and enforcement of the initial order entered in the CCAA proceeding, and application of section 362); *In re Catalyst Paper Corp.*, No. 12-

10221 (PJW) (Bankr. D. Del. Jan. 19, 2012) (order granting provisional relief, including application of sections 362 and 365(e)); *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) (order granting provisional relief, including recognition and enforcement of the initial order entered in the CCAA proceeding, and application of sections 362, 364(e) and 365(e)).

## WAIVER OF BANKRUPTCY RULE 1007(A)(4)(B)

45.    Contemporaneously with the filing of this Motion, the Foreign Representative filed the Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 (the "Bankruptcy Disclosures"). Among other things, Bankruptcy Rule 1007(a)(4)(B) requires a list of all entities against whom provisional relief is being sought under Section 1519 of the Bankruptcy Code, unless the court orders otherwise. As set forth in this Motion and as reflected in the Bankruptcy Disclosures, the Foreign Representative seeks provisional application of the stay similar to that available under Section 362 of the Bankruptcy Code that would specifically, but not exclusively, affect those parties. The relief sought herein could likewise affect other parties to the extent any party might commence litigation against the Debtors or enforce against their property.

46.    The disclosure provided in the Rule 1007 statement with respect to this Motion is sufficient to satisfy Bankruptcy Rule 1007(a)(4)(b). However, and given that other, unknown parties may be affected, the Foreign Representative also requests that the Court waive any further requirement under Rule 1007(a)(4)(B) with respect to the provisional relief sought by this Motion as applied to parties that will be generally affected by the provisional relief order especially in light of the extensive number of parties that the Debtors did include in the Bankruptcy Disclosures.

## NO PRIOR REQUEST

47.    No previous request for the relief requested herein has been made to this Court or any other court.

4882-8738-1152, v. 2

## NOTICE

48.     The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m). The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions and the Foreign Representative's request for entry of an order granting the relief sought in the Verified Petition in the form and manner set forth in the *Motion for Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice*, filed contemporaneously herewith. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

**WHEREFORE** the Foreign Representative respectfully requests that this Court enter the Provisional Relief Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

*Remainder of page intentionally left blank*

4882-8738-1152, v. 2

Dated:  January 25, 2024                       **CHIPMAN BROWN**

                                               */s/ Mark L. Desgrosseilliers*
                                               Mark L. Desgrosseilliers (No. 4083)
                                               Kristi J. Doughty (No. 3826)
                                               Hercules Plaza
                                               1313 N. Market Street, Suite 5400
                                               Wilmington, DE 19801
                                               Tel. (302) 295-0191
                                               Fax. (302) 295-0199
                                               desgross@ChipmanBrown.com
                                               doughty@ChipmanBrown.com


                                               -and-

                                               **PERKINS COIE LLP**

                                               Tina N. Moss (*pro hac vice* pending)
                                               1155 Avenue of the Americas
                                               22nd Floor
                                               New York, NY  10036
                                               Tel. (212) 262-6900
                                               Fax. (212) 977-1648
                                               TMoss@perkinscoie.com

                                               Paul Jasper (*pro hac vice* pending)
                                               505 Howard Street
                                               Suite 1000
                                               San Francisco, California 94105-3204
                                               Tel. (415) 344-7000
                                               Fax. (415) 344-7050
                                               PJasper@perkinscoie.com

                                               ***Attorneys for Foreign Representative***