# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SIMEX INC. et al.[1],<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No.  24-10083 (TMH)<br><br>(Joint Administration Requested) |

**DECLARATION OF ROGER JAIPARGAS IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF CANADIAN PROCEEDINGS AS FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Roger Jaipargas, to the best of my information and belief, state as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration based upon my own personal knowledge except for those portions specified as being otherwise.

2. I am a Partner of the Canadian law firm of Borden Ladner Gervais LLP ("BLG"), Bay Adelaide Centre, East Tower, 22 Adelaide Street West, Suite 3400, Toronto, ON, Canada M5H 4E3. BLG is Canadian counsel to Deloitte Restructuring Inc., in its capacity as court-appointed Monitor and duly authorized Foreign Representative ("Deloitte", the "Monitor" or the "Foreign Representative") for the above-captioned Debtors (the "Debtors"), whose reorganization proceedings pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as

---

[1] The chapter 15 debtor incorporated in Canada and/or in the province of Ontario (the "Canadian Debtor"), along with the last four digits of the Canadian Debtor's Canadian business number, is: SimEx Inc. ("SimEx") (5222).  The chapter 15 debtors incorporated in the United States (the "U.S. Debtors"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Iwerks Entertainment, Inc. ("Iwerks"), (9361) and SimEx-Iwerks Myrtle Beach, LLC ("SIMB") (8417). The Canadian Debtor and the U.S. Debtors are referred to herein, collectively, as the "Debtors" or "SimEx"). The Debtors' executive headquarters are located at: 210 King St East, 600, Toronto, Ontario, Canada, M5A 1J7.

amended, the "CCAA"), are currently pending (the "CCAA Proceedings") before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court").

3. I submit this declaration (the "Declaration") in support of the *Verified Petition of Foreign Representative for (I) Recognition of Canadian Proceedings as Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 4] filed contemporaneously herewith (the "Verified Petition")[2] and the *Foreign Representative's Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* [D.I. 6] (the "Provisional Relief Motion") filed in these chapter 15 cases on this day, in connection with the relief Deloitte, as the Foreign Representative, is requesting in these chapter 15 cases and to aid the United States Bankruptcy Court for the District of Delaware (the "Court") in understanding Canadian law pursuant to the CCAA.

4. If I were called upon to testify, I could and would testify competently to the statements set forth herein. I am authorized to submit this declaration on behalf of the Foreign Representative.

5. In this Declaration, after describing my background and qualifications, I provide a description of Canadian law and the practice relevant to this Court's consideration of the Chapter 15 Petition.

6. In preparing this Declaration, I have reviewed (i) the Verified Petition, (ii) the documents submitted in these chapter 15 cases and (iii) the relevant provisions of the CCAA and other relevant provisions of Canadian law that I consider relevant to this application.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

**Professional Background and Qualifications**

7. I attended the University of Windsor where I graduated with a Bachelor of Law. I was admitted to the Ontario Bar in 2000.

8. I have extensive experience in the field of Canadian corporate reorganization and insolvency law, advising debtor corporations, lenders, creditors, court-appointed officers (including CCAA monitors), trustees, restructuring officers, receivers and acquirers in CCAA proceedings, receiverships, bankruptcy, as well as under federal and provincial corporate and/or insolvency legislation in both Canada and international contexts.

9. My expertise in Canadian restructuring and insolvency law has been recognized by different publications, including, *Chambers Global — The World's Leading Lawyers for Business*, *Chambers Canada — Canada's Leading Lawyers for Business*, *The Canadian Legal Lexpert® Directory*, and *IFLR1000 - The Guide to the World's Leading Financial Law Firms*.

**The Debtors' Canadian Proceedings**

10. As provided in the *Declaration of Foreign Representative Pursuant to 11 U.S.C.§ 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Deloitte Declaration") filed concurrently herewith, the purpose of the foreign recognition proceedings and the provisional relief requested in the United States is to help ensure the enforceability and effectiveness of the Initial CCAA Order and subsequent orders to be entered by the Canadian Court in the CCAA Proceedings. The foreign recognition proceedings will ultimately ensure comity is granted to the orders issued in the CCAA Proceedings in the United States, which will ensure, in addition to the specific relief sought in the contemporaneously filed Provisional Motion, that no

dissident creditors can bypass the CCAA Proceedings by commencing litigation or taking other actions in the United States to obtain a greater recovery than other, similarly situated creditors in the CCAA Proceedings. Obtaining this Court's recognition and enforcement of the CCAA Proceedings and the anticipated sale and investment solicitation process for the Debtors' assets through the CCAA Proceedings, together with other related relief requested contemporaneously herewith, is necessary to the expeditious and efficient prosecution of the CCAA Proceedings.

11. On January 19, 2024, the Canadian Court entered the Initial CCAA Order, pursuant to which, *inter alia*, Deloitte was appointed to act as Monitor and was duly authorized to act as Foreign Representative, a comprehensive stay of proceedings was ordered to protect the Debtors, their property, and their directors and officers, and the Debtors were authorized to enter into and borrow up to $600,000 in funds available under an interim financing agreement from Royal Bank of Canada, the DIP Lender, in order to finance the Debtors' working capital requirements and other general corporate purposes and capital expenditures during the pendency of the CCAA Proceedings. A true and correct copy of the Initial CCAA Order is attached to the Chapter 15 Petitions.

12. The Initial CCAA Order also provides that the Monitor is authorized and empowered to act as a foreign representative in respect of the within proceedings for the purpose of having the CCAA Proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Debtors to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1530, as amended.

13. The Initial CCAA Order further authorizes, among other provisions:

    (a)    a stay of proceedings or the exercise of rights or remedies against the Debtors and the Monitor affecting the Debtors' business and property, until January 29, 2024, at which time a Comeback Hearing will take place to extend the stay of proceedings;

    (b)    that counterparties who have verbal or written agreements with the Debtors must continue providing services to the Debtors and are forbidden from discontinuing those services until allowed by the Canadian Court;

    (c)    the appointment of the Monitor to, among other responsibilities: (a) monitor the Debtors' receipts and disbursements; (b) report to the Canadian Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Debtors' Property and Business (as those terms are defined in the Initial CCAA Order), and such other matters as may be relevant to the Canadian Proceedings; (c) assist the Debtors in their dissemination of financial and other information; (d) advise the Debtors in their preparation of the Debtors' cash flow statements and reporting, which information shall be reviewed with the Monitor on a periodic basis; (e) advise the Debtors in their development of a plan of reorganization; (f) assist the Debtors with the holding and administering of creditors' or shareholders' meetings for voting on the plan, and (g) have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Debtors, to the extent that is necessary to adequately assess the Debtors' business and financial affairs or to perform its duties arising under the Initial Order;

    (d)    grants the Monitor, counsel to the Monitor, and counsel to the Debtors a charge (the Administration Charge) on the Property as security for their respective fees and disbursements; and

    (e)    grants the Directors and Officers of the Debtors a charge (the Directors' Charge) on the Property as security for the indemnity provided.

*See* Initial CCAA Order at ¶¶ 13-16, 18, 20, 30 31, 34, 37, 43.

### **Statements of Canadian Law and Practice**

14.    The CCAA provides for a court-supervised reorganization procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest.

15.    A CCAA proceeding is a voluntary insolvency proceeding in which a debtor, under court supervision, reorganizes, sells its business and assets as a going concern, or sometimes

liquidates its business and distributes proceeds to creditors pursuant to a plan or Order of the Court. The debtor's assets and affairs are subject to the supervision of the court during the pendency of a CCAA proceeding.

16. In a CCAA proceeding, absent exceptional circumstances, a debtor's management and board of directors remain in place, and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, borrowing significant amounts, or changing corporate structures, subject to oversight by a court-appointed monitor (discussed below) and approval of the court.

17. Upon the commencement of a CCAA proceeding, the court will appoint a qualified monitor (*See* CCAA, RSC 1985, c C-36, s 11.7) who functions as an independent court officer and observer of the CCAA proceeding and the debtor's business and, amongst other things, (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company, (iii) notifies the company's creditors and, if applicable, shareholders of any meetings and tabulates votes at these meetings, if held, (iv) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approves the disclaimer of contracts and leases, (vi) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (vii) prepares a report on the plan of arrangement, which is usually included in the mailing of the plan, if one is filed. *See id.*, s 23.

18. The monitor acts as the "eyes and ears of the court." Consent of the monitor is generally not required for the debtor to manage its business, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor and/or its creditors. Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course (*see id.*, s 23(1)(i)), court

approval is generally required for such transactions and the court gives weight to the monitor's recommendations concerning such transactions. *See id*., s 36(1) and (3). In some cases, the Court may provide authority for the Monitor to approve significant transactions below a certain threshold.

19. In appropriate circumstances, a foreign representative may be authorized by the Court to apply to the court in a jurisdiction outside Canada for recognition of the Canadian proceedings on behalf of the debtor company.

20. Upon the commencement of a CCAA proceeding, all actions against the debtor and its assets are stayed, wherever located (similar to the Bankruptcy Code's automatic stay). *See id*., s 11.02. This stay goes into effect upon the entry of an initial order and is first granted for a maximum period of 10 days. *See id.*, s 11.02(1). The relief granted by the court in the initial order is required to be limited to relief that is reasonably necessary for the continued operations of the debtor company in the ordinary course of business within such 10-day timeframe. *See id*., s 11.001. The initial stay period is typically extended beyond the 10-day period by an Amended and Restated Initial Order where the debtor can show it continues to act with good faith and due diligence. There is no limit on the number or duration of these extensions of the stay. *See id*., s 11.02(2). As of the date hereof, the stay period is valid until January 29, 2024. *See* Initial CCAA Order, at ¶¶ 13, 44

21. In the Initial CCAA Order, the Canadian Court granted a stay of proceedings, rights, and remedies until January 29, 2024, providing that during such stay no proceeding or enforcement process in any court or tribunal against or in respect of the Debtors or the Monitor shall be commenced or continued except with the written consent of the Debtors and the Monitor and ordering that all rights and remedies held by any individual, firm, corporation, government

body or agency or any other entities be stayed and suspended except with the written consent of the Debtors and the Monitor. *See* Initial CCAA Order ¶¶ 13-14.

22. As is the case in the United States chapter 11 process, the company will usually continue to operate during the CCAA proceedings, and it may also avail itself of restructuring measures (such as the disclaimer of onerous executory contracts) with a view to enhance the prospects of bringing forward a successful plan of arrangement or other restructuring transaction. *See* CCAA, s 32(1)-(3).

23. In a CCAA proceeding, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the CCAA proceeding. *See id.*, s 34(1).

24. Upon determination of the value of the counterparty's claim, the claim amount is included in the group of unsecured claims, which will be subject to the CCAA proceeding and may be paid in accordance with a plan of compromise or arrangement, if one is filed, and if the plan is sanctioned by the court.

25. A plan of arrangement is one of the possible outcomes of a process under the CCAA. For a plan of arrangement to be binding on each class of creditors, a majority of the proven creditors in that class, by number, together with two-thirds (2/3) of the proven creditors in that class, by dollar value, must approve of said plan presented to them. If a class of creditors approves the plan, it is binding on all creditors within the class, subject to the court's approval of the plan. If all the classes of creditors approve the plan, the court must then approve the plan as a final step. *See id.*, s 6(1). Upon court approval, the debtor continues forward as outlined under the plan until it has satisfied the requirements under the plan.

-8-
4876-1917-6096, v. 2

26. A variety of other outcomes are also possible. These include notably a sale of assets or shares, or other restructuring transaction, effected with court approval in the absence of a plan of arrangement.

27. The assets of a business may also be sold outside of a CCAA plan, and outside of the ordinary course of business, without the formal approval of its creditors provided the company obtains prior authorization from the court. *See id.*, c C-36, s 36(1).

28. Throughout a CCAA proceeding, the court retains broad discretion to "make any order that it considers appropriate in the circumstances." *See id.*, s 11.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my information and belief.

Executed on this 25th day of January 2024
Toronto, Ontario
Canada

By: */s/ Roger Jaipargas*
      Roger Jaipargas

      Borden Ladner Gervais LLP
      Bay Adelaide Centre, East Tower
      22 Adelaide Street West
      Suite 3400
      Toronto, ON, Canada M5H 4E3