# EXHIBIT B

## (*Amended and Restated* Initial Order)

Court File No. CV-24-00713128-0000

**ONTARIO**

**SUPERIOR COURT OF JUSTICE**

**[COMMERCIAL LIST]**

| THE HONOURABLE MADAM | ) | MONDAY, THE 29TH |
|---|---|---|
| JUSTICE CONWAY | ) ) ) | DAY OF JANUARY, 2024 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985 c.C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF SIMEX INC., IWERKS ENTERTAINMENT, INC., SIMEX-IWERKS MYRTLE BEACH, LLC (the "Applicants")

**AMENDED AND RESTATED INITIAL ORDER**

THIS MOTION, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") for an order amending and restating the Initial Order in these proceedings (the "Initial Order") originally issued on January 19, 2024 (the "Initial Filing Date") was heard this day by judicial videoconference via Zoom.

ON READING the affidavits of Michael Needham sworn January 17, 2024 and January 24, 2024 and the Exhibits thereto, the consent of Deloitte Restructuring Inc. to act as Monitor (in such capacity, the "Monitor"), the pre-filing report of Deloitte Restructuring Inc. in its capacity as the proposed Monitor dated January 18, 2024 and the first report of the Monitor dated January <*>, 2024, and on hearing the submissions of counsel for the Applicants, counsel for the Monitor, counsel for Royal Bank of Canada, counsel for BDC Capital Inc. and the other parties listed on the participant information form and no one appearing for any other party although duly served as appears from the affidavit of service of Amanda Adamo sworn January <*>, 2024,

**AMDENDMENT AND RESTATEMENT**

1.      THIS COURT ORDERS that the Initial Order shall be amended and restated with this Amended and Restated Order.

**SERVICE**

2.      THIS COURT ORDERS that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

**APPLICATION**

3.      THIS COURT ORDERS AND DECLARES that the Applicants are each a company to which the CCAA applies.

**PLAN OF ARRANGEMENT**

4.      THIS COURT ORDERS that the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "Plan").

**POSSESSION OF PROPERTY AND OPERATIONS**

5.      THIS COURT ORDERS that the Applicants shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "Property").  Subject to further Order of this Court, the Applicants shall continue to carry on business in a manner consistent with the preservation of their business (the "**Business**") and Property.  The Applicants are authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively "Assistants") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

6.      THIS COURT ORDERS that the Applicants shall be entitled but not required to pay the following expenses whether incurred prior to or after the Initial Filing Date:

(a)      all outstanding and future wages, salaries, employee and pension benefits, vacation pay and expenses payable on or after the Initial Filing Date, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and

(b)      the fees and disbursements of any Assistants retained or employed by the Applicants in respect of these proceedings, at their standard rates and charges.

7.      THIS COURT ORDERS that, except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course after the Initial Filing Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)      all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b)      payment for goods or services actually supplied to the Applicants following the Initial Filing Date.

8.      THIS COURT ORDERS that the Applicants shall remit, in accordance with legal requirements, or pay:

(a)      any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

(b)      all goods and services or other applicable sales taxes (collectively, "Sales Taxes") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the Initial Filing Date, or where such Sales Taxes were accrued or collected prior to the

Initial Filing Date but not required to be remitted until on or after the Initial Filing Date, and

(c)  any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

9.    THIS COURT ORDERS that until a real property lease is disclaimed in accordance with the CCAA, the Applicants shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) but for greater certainty excluding accelerated rent or penalties, fees or other charges arising as a result of the insolvency of the Applicants or the making of this Order or as otherwise may be negotiated between the Applicant and the landlord from time to time ("Rent"), for the period commencing from and including the Initial Filing Date, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including the Initial Filing Date shall also be paid.

10.    THIS COURT ORDERS that, except as specifically permitted herein, the Applicants are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by an Applicant to any of its creditors as of the Initial Filing Date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of its Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business.

**RESTRUCTURING**

11.    THIS COURT ORDERS that the Applicants shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined), have the right to:

(a)     permanently or temporarily cease, downsize or shut down any of its business or operations;

(b)     terminate the employment of such of their employees or temporarily lay off such of its employees as they deems appropriate; and

(c)     pursue all avenues of refinancing of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "Restructuring").

12.     THIS COURT ORDERS that the Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicants, or by further Order of this Court upon application by the Applicants on at least two (2) days notice to such landlord and any such secured creditors. If the Applicants disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, the Applicants shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

13.     THIS COURT ORDERS that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises, provided that nothing

herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY**

14.      THIS COURT ORDERS that until and including May 3, 2024, or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced or continued against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

15.      THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower an Applicant to carry on any business which such Applicant is not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

**NO INTERFERENCE WITH RIGHTS**

16.      THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence, sublicence, authorization or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

## CONTINUATION OF SERVICES

17.     THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with the Applicant or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Initial Filing Date are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

18.     THIS COURT ORDERS that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Initial Filing Date, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants.  Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

19.     THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the Initial Filing Date and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such

obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

20.     THIS COURT ORDERS that the Applicants shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Applicants after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct (the "D&O Indemnity").

21.     THIS COURT ORDERS that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "Directors' Charge") on the Property, which charge shall not exceed an aggregate amount of USD $300,000, as security for the indemnity provided in paragraph 20 of this Order.  The Directors' Charge shall have the priority set out in paragraphs 39 and 41 herein.

22.     THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 20 of this Order.

**APPOINTMENT OF MONITOR**

23.     THIS COURT ORDERS that Deloitte Restructuring Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

24.     THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)     monitor the Applicants' receipts and disbursements;

(b)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)     assist the Applicants, to the extent required by the Applicants, in their dissemination, to the DIP Lender and its counsel of financial and other information as agreed to between the Applicants and the DIP Lender which may be used in these proceedings including reporting on a basis to be agreed with the DIP Lender;

(d)     advise the Applicants in their preparation of the Applicants' cash flow statements and reporting required by the DIP Lender, which information shall be reviewed with the Monitor and delivered to the DIP Lender and its counsel on a periodic basis, but not less than weekly, or as otherwise agreed to by the DIP Lender;

(e)     advise the Applicants in their development of the Plan and any amendments to the Plan;

(f)     assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicants, to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order;

(h)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(i)     perform such other duties as are required by this Order or by this Court from time to time.

25.     THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

26.     THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "Possession") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "Environmental Legislation"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

27.     THIS COURT ORDERS that that the Monitor shall provide any creditor of the Applicants and the DIP Lender with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

28.     THIS COURT ORDERS that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save

and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

29.     THIS COURT ORDERS that the Monitor, counsel to the Monitor and counsel to the Applicants shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings. The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor and counsel for the Applicants on a bi-weekly basis.

30.     THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

31.     THIS COURT ORDERS that the Monitor, counsel to the Monitor, US counsel to the Monitor, and the Applicants' counsel shall be entitled to the benefit of and are hereby granted a charge (the "Administration Charge") on the Property, which charge shall not exceed an aggregate amount of USD $500,000,  as security for their professional fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 38 and 40 hereof.

**DIP FINANCING**

32.     THIS COURT ORDERS that the Applicant is hereby authorized and empowered to obtain and borrow under a credit facility from Royal Bank of Canada (the "DIP Lender") in order to finance the Applicants' working capital requirements and other general corporate purposes and capital expenditures, provided that borrowings under such credit facility shall not exceed the principal amount of USD $600,000 unless permitted by further Order of this Court.

33.     THIS COURT ORDERS THAT such credit facility shall be on the terms and subject to the conditions set forth in the term sheet between the Applicants and the DIP Lender (the "Commitment Letter"), filed.

34.     THIS COURT ORDERS that the Applicants are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security

documents, guarantees and other definitive documents (collectively, the "Definitive Documents"), as are contemplated by the Commitment Letter or as may be reasonably required by the DIP Lender pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the DIP Lender under and pursuant to the Commitment Letter and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

35.    THIS COURT ORDERS that the DIP Lender shall be entitled to the benefit of and is hereby granted a charge (the "DIP Lender's Charge") on the Property, which DIP Lender's Charge shall not secure an obligation that exists before this Order is made.  The DIP Lender's Charge shall have the priority set out in paragraphs 38 and 40 hereof.

36.    THIS COURT ORDERS that, notwithstanding any other provision of this Order:

(a)    the DIP Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lender's Charge or any of the Definitive Documents;

(b)    upon the occurrence of an event of default under the Definitive Documents or the DIP Lender's Charge, the DIP Lender, upon two (2) days notice to the Applicant and the Monitor, may exercise any and all of its rights and remedies against the Applicants or the Property under or pursuant to the Commitment Letter, Definitive Documents and the DIP Lender's Charge, including without limitation, to cease making advances to the Applicants and set off and/or consolidate any amounts owing by the DIP Lender to the Applicants against the obligations of the Applicant to the DIP Lender under the Commitment Letter, the Definitive Documents or the DIP Lender's Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of any of the Applicants; and

(c)     the foregoing rights and remedies of the DIP Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Applicants or the Property.

37.     THIS COURT ORDERS AND DECLARES that the DIP Lender shall be treated as unaffected in any plan of arrangement or compromise filed by the Applicant under the CCAA, or any proposal filed by the Applicants under the *Bankruptcy and Insolvency Act* of Canada (the "BIA"), with respect to any advances made under the Definitive Documents.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

38.     THIS COURT ORDERS that the priorities of the Directors' Charge, the Administration Charge and the DIP Lender's Charge, as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of USD $500,000);

> Second – DIP Lender's Charge (to a maximum principal amount of USD $600,000; and

> Third – Directors' Charge (to the maximum amount of USD $300,000).

39.     THIS COURT ORDERS that the filing, registration or perfection of the Directors' Charge, the Administration Charge or the DIP Lender's Charge (collectively, the "Charges") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

40.     THIS COURT ORDERS that each of the Charges shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (collectively, "Encumbrances") in favour of any Person, notwithstanding the order of perfection or attachment.

41.     THIS COURT ORDERS that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Directors' Charge, the

Administration Charge or the DIP Lender's Charge, unless the Applicants also obtain prior written consent of the Monitor, the DIP Lender and the beneficiaries of the Directors' Charge and the Administration Charge, or further Order of this Court.

42.     THIS COURT ORDERS that the Charges shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "Chargees") and/or the DIP Lender thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "Agreement") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Commitment Letter or the Definitive Documents shall create or be deemed to constitute a breach by the Applicants of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants entering into the Commitment Letter, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c)     the payments made by the Applicants pursuant to this Order, the Commitment Letter or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

43.     THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicant's interest in such real property leases.

## SALE AND INVESTMENT SOLICITATION PROCESS

44.    THIS COURT ORDERS that the sale and investment solicitation process appended hereto as **Schedule "A"** (the "**SISP**") (subject to any amendments thereto that may be made in accordance with the terms thereof and with this Order) be and is hereby approved and the Applicants and the Monitor are hereby authorized and directed to carry out the SISP in accordance with its terms and the terms of this Order.

45.    THIS COURT ORDERS that Applicants and the Monitor are hereby further authorized and directed to take such steps as each considers necessary or desirable in carrying our each of the respective obligations under the SISP, subject to the prior approval of this Court being obtained before the completion of any transition(s) under the SISP.

46.    THIS COURT ORDERS that the Applicants and the Monitor and their respective affiliates, partners, directors, officers, employees, advisors, agents and representatives shall have no liability with respect to any and all losses, claims, damages or liabilities of any nature or kind to any person  in connection with or as a result of performing their duties under the SISP, except to the extent of such losses, claims, damages or liabilities arising or resulting form the gross negligence of wilful misconduct of the Applicants or the Monitor, as applicable, as determined by the Court.

47.    THIS COURT ORDERS that the Applicants and Monitor may apply to this Cout for advice and directions with respect to the SISP at any time.

## PIPEDA

48.    THIS COURT ORDERS that, pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act*, the Applicants and the Monitor may disclose personal information of identifiable individuals to prospective purchasers or bidders for the Property and to their advisors, but only to the extent desirable or required to carry out the SISP and to attempt to complete a transaction or transactions pursuant to the SISP (each, a "Transaction"). Each prospective purchaser, bidder or investor to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Transaction, and if it does not complete a Transaction, shall return all such information to the Applicants, or in the alternative destroy all

such information. The purchaser, bidder or investor in any Transactions shall be entitled to continue to use the personal information provided to it, and related to the Property involved in the Transaction, in a manner which is in all material respects identical to the prior use of such information by the Applicants, and shall return all other personal information to the Applicants, or ensure that all other personal information is destroyed.

**SERVICE AND NOTICE**

49.     THIS COURT ORDERS that the Monitor shall (i) without delay, publish in the National Post (National Edition) a notice containing the information prescribed under the CCAA, (ii) within five days after the Initial Filing Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Applicants of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

50.     THIS COURT ORDERS that the Guide Concerning Commercial List E-Service (the "Guide") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Guide (which can be found on the Commercial List website at https://www.ontariocourts.ca/scj/practice/regional-practice-directions/eservice-commercial/) shall be valid and effective service. Subject to Rule 17.05 of the *Rules of Civil Procedure* (Ontario) and paragraph 7 of the Guide, this Order shall constitute an order for substituted service pursuant to Rule 16.04. Subject to Rule 3.01(d) and paragraph 13 of the Guide, service of documents in accordance with the Guide will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Guide with the following URL www.insolvencies.deloitte.ca/en-ca/SimEx.

51.     THIS COURT ORDERS that the Monitor shall create, maintain and update as necessary a list of all Persons appearing in person or by counsel in these proceedings (the "Service List"). The Monitor shall post the Service List, as may be updated from time to time, on the Case Website, provided that the Monitor shall have no liability in respect of the accuracy of or the timeliness of making any changes to the Service List.

52.      THIS COURT ORDERS that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicants and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or facsimile transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

53.      THIS COURT ORDERS that the Applicants, the Monitor and their respective counsel are at liberty to serve or distribute this Order, any other materials and Orders as may be reasonably required in these proceedings, including any notices, or other correspondence, by forwarding true copies thereof by electronic message to the Applicants' creditors or other interested parties and their advisors. For greater certainty, any such distribution or service shall be deemed to be in satisfaction of a legal or juridical obligation and notice requirements within the meaning of clause 3(c) of the Electronic Commerce Protection Regulations, Reg. 81000-2-175 (SOR/DORS).

**GENERAL**

54.      THIS COURT ORDERS that the Applicants or the Monitor may from time to time apply to this Court to amend, vary or supplement this Order or for advice and directions in the discharge of their powers and duties hereunder.

55.      THIS COURT ORDERS that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

56.      THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the

Applicant and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicant and the Monitor and their respective agents in carrying out the terms of this Order.

57.     THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in any jurisdiction outside Canada, including acting as a foreign representative of the Applicants to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1530, as amended.

58.     THIS COURT ORDERS that any interested party (including the Applicant and the Monitor) may apply to this Court to vary or amend this Order at the Comeback Hearing, or at any other time, on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order; provided that the Chargees shall be entitled to rely on this Order as granted and on the Charges and priorities set forth in paragraphs 38 and 40 hereof, and subject to the limitations in paragraph 44, with respect to any fees, expenses and disbursements (including amounts loaned to the Applicant pursuant to the Commitment Letter) incurred as applicable, until the date this Order may be amended, varied or stayed.

59.     THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard Time on the date of this Order without any requirement for issuance and entry.

# SCHEDULE "A"

## SISP  TERMS AND CONDITOINS

**[see attached]**

**Sale and Investment Solicitation Process**

**SimEx Inc., Iwerks Entertainment Inc. and SimEx-Iwerks Myrtle Beach LLC**

**Introduction**

1. On January 19, 2024, SimEx Inc., Iwerks Entertainment Inc., and SimEx-Iwerks Myrtle Beach LLC (together, the "**Applicants**") obtained an initial order (that may be amended or amended and restated from time to time, the "**Initial Order**") under the *Companies' Creditors Arrangement Act* (the "**CCAA**" and the "**CCAA Proceedings**") from the Ontario Superior Court of Justice (Commercial List) (the "**CCAA Court**"). The Initial Order, among other things:

    a. Provides for a stay of all proceedings against the Applicants assets, properties and undertaking and their respective directors and officers; and

    b. Appoints Deloitte Restructuring Inc. as the monitor of the Applicants (in such capacity, the "**Monitor**").

2. Pursuant to the Initial Order, the Monitor is authorized to conduct a sale and investment solicitation process (the "**SISP**"), as described herein, with the assistance of the Applicants. The SISP is intended to solicit interest in an acquisition or refinancing of the business, or a sale of the assets and/or the business of the Applicants by way of merger, reorganization, recapitalization, primary equity issuance, or other similar transaction. The Monitor intends to provide all qualified interested parties with an opportunity to participate in the SISP.

**Opportunity**

3. The SISP is intended to solicit interest in and opportunities for a sale of, or investment in, all or part of the Applicants' assets and business operations (the "**Opportunity**"). The Opportunity may include one or more of a restructuring, recapitalization or other form or reorganization of the business and affairs of the Applicants as a going concern, or a sale of all, substantially all or one or more components of the Applicants' assets (the "**Property**") and business operations (the "**Business**") as a going concern or otherwise, or some combination thereof (each, a "**Transaction**").

4. This document (the "**SISP Procedure**") describes the SISP, including the manner in which individuals, corporations, limited and unlimited liability companies, general and limited partnerships, associations, trusts, unincorporated organizations, joint ventures, governmental organizations or other entities (each, a "**Person**") may gain access to or continue to have access to due diligence materials concerning the Applicants, the Property and the Business, how bids involving the Applicants, the Property or the Business will be submitted to and dealt with by the Monitor and how Court approval will be obtained in respect of a Transaction.

5. The SISP contemplates a one-stage process that involves the submission by interested parties of binding offers by the Bid Deadline (as defined below).

6. Except to the extent otherwise set forth in a definitive sale or investment agreement with a successful bidder, any Transaction will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Monitor, the Applicants, or any of their respective agents, advisors or estates, and, in the event of a sale, all of the right, title and interest of the Applicants in and to the Property to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests therein and thereon pursuant to Court orders, to the extent that the Court deems it appropriate to grant such relief and except as otherwise provided in such Court orders.

7. In the SISP, (i) "**Business Day**" means any day (other than Saturday or Sunday) that banks are open for business in Toronto, Ontario. If any deadline date referred to in the SISP falls on a day that is not a Business Day, then such date shall be extended until the next Business Day; and (ii) the words "include", "includes" and "including" shall be deemed to be followed by the phrase, "without limitation".

**Timeline**

8. The following table sets out the key milestones under the SISP:

| Milestone | Timeline | Targeted Deadline |
|---|---|---|
| Commencement date | Immediately following the approval of the SISP Process | January 29, 2024 |
| Preparation of SISP materials (i.e., Teaser, Investment Memorandum, Buyer list, Notices for trade publication, NDA, populate EDR) | **10 days (in advance, immediately after Initial Order)** | **January 29, 2024** |
| Bid Deadline | **45 days** | **March 14, 2024** |
| Auction Date (if applicable) | **1 day** | **March 21, 2024** |
| Finalize Transaction agreement | **7 days** | **March 29, 2024** |
| Sale Approval Motion (as defined below) in CCAA Court | | **April 19, 2024 (outside date)** |
| Closing of the Transaction | | **May 3, 2024 (outside date)** |

9. The dates set out in the SISP may be extended by either: (i) further order of the Court; or (ii) the Monitor, with the consent of Royal Bank of Canada.

**Solicitation of Interest: Notice of the SISP**

10. As soon as reasonably practicable:

    a. the Monitor, in consultation with the Applicants, will prepare a list of potential bidders, including (i) parties that have approached the Applicants or the Monitor indicating an interest in the Opportunity, and (ii) local and international strategic and financial parties who the Applicants, in consultation with the Monitor, believe may be interested in a

Transaction pursuant to the SISP, in each case whether or not such party has submitted a letter of intent or similar document (collectively, "**Known Potential Bidders**");

b.  the Monitor will arrange for a notice of the SISP (and such other relevant information which the Monitor, in consultation with the Applicants, considers appropriate) (the "**Notice**") to be published in Insolvency Insider, the Monitor's website, and any other newspaper or journal or industry website as the Applicants, in consultation with the Monitor, consider appropriate, if any; and

c.  the Monitor, in consultation with the Applicants, will prepare: (i) a process summary (the "**Teaser Letter**") describing the Opportunity, outlining the process under the SISP and inviting recipients of the Teaser Letter to express their interest pursuant to the SISP; and (ii) a non-disclosure agreement in form and substance satisfactory to the Applicants and the Monitor and their respective counsel (an "**NDA**").

11. The Monitor will send the Teaser Letter and NDA to each Known Potential Bidder and to any other Person who requests a copy of the Teaser Letter and NDA or who is identified to the Applicants or the Monitor as a potential bidder as soon as reasonably practicable after such request or identification, as applicable.

**Potential Bidders and Due Diligence Materials**

12. Any party who wishes to participate in the SISP (a "**Potential Bidder**"), must provide to the Monitor an NDA executed by it, and which shall inure to the benefit of any purchaser of the Business or Property, or any portion thereof, and a letter setting forth the identity of the Potential Bidder, the contact information for such Potential Bidder and full disclosure of the direct and indirect principals of the Potential Bidder.

13. The Monitor, in consultation with the Applicants, shall in their reasonable business judgment and subject to competitive and other business considerations, afford each Potential Bidder who has signed and delivered an NDA to the Monitor and provided information as to their financial ability, in the Monitor's sole discretion, to close a transaction, such access to due diligence material and information relating to the Property and Business as the Applicants or the Monitor deem appropriate. Due diligence shall include access to an electronic data room ("**EDR**") containing information about the Applicants, the Property and the Business, and may also include management presentations, on-site inspections, and other matters which a Potential Bidder may reasonably request and as to which the Applicants, in their reasonable business judgment and after consulting with the Monitor, may agree. The Monitor will designate a representative to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders and the manner in which such requests must be communicated. Neither the Applicants nor the Monitor will be obligated to furnish any information relating to the Property or Business to any person other than to Potential Bidders. Furthermore, and for the avoidance of doubt, selected due diligence materials may be withheld from certain Potential Bidders if the Applicants, in consultation with and with the approval of the Monitor, determine such information to represent proprietary or sensitive competitive information. Neither the Applicants nor the Monitor is responsible for, and will bear no liability

with respect to, any information obtained by any party in connection with the Sale of the Property and the Business.

14. Potential Bidders must rely solely on their own independent review, investigation and/or inspection of all information and of the Property and Business in connection with their participation in the SISP and any transaction they enter into with the Applicants.

**Formal Binding Offers**

15. Potential Bidders that wish to make a formal offer to purchase or make an investment in the Applicants or their Property or Business (a "**Bidder**") shall submit a binding offer (a "**Bid**") that complies with all of the following requirements to the Monitor and Applicants' counsel at the addresses specified in Schedule "1" hereto (including by e-mail), so as to be received by them not later than **5:00 PM (EST)** on **March 14, 2024** or as may be modified in the Bid process letter that may be circulated by the Monitor to Potential Bidders, with the approval of the Applicants (the "**Bid Deadline**"):

    a.  the Bid must be either a binding offer to:

        i.  acquire all, substantially all or a portion of the Property (a "**Sale Proposal**"); and/or

        ii.  make an investment in, restructure, reorganize or refinance the Business or the Applicants (an "**Investment Proposal**"); or

    b.  carry out any combination of a Sale Proposal and an Investment Proposal;

    c.  the Bid (either individually or in combination with other bids that make up one bid) is an offer to purchase or make an investment in some or all of the Applicants or their Property or Business and is consistent with any necessary terms and conditions established by the Applicants and the Monitor and communicated to Bidders;

    d.  the Bid includes a letter stating that the Bidder's offer is irrevocable until the selection of the Successful Bidder (as defined below), provided that if such Bidder is selected as the Successful Bidder, its offer shall remain irrevocable until the closing of the transaction with the Successful Bidder;

    e.  the Bid includes duly authorized and executed Transaction agreements, including the purchase price, investment amount (the "**Purchase Price**"), together with all exhibits and schedules thereto;

    f.  the Bid is accompanied by a deposit (the "**Deposit**") in the form of a wire transfer (to a trust account specified by the Monitor), in an amount equal to ten percent (10%) of the Purchase Price, investment amount or other consideration to be paid in respect of the Bid, to be held and dealt with in accordance with this SISP;

g.  the Bid includes written evidence of a firm, irrevocable commitment for financing or other evidence of ability to consummate the proposed transaction, that will allow the Applicants and the Monitor to make a determination as to the Bidder's financial and other capabilities to consummate the proposed transaction;

h.  the Bid is not conditioned on (i) the outcome of unperformed due diligence by the Bidder, or (ii) obtaining financing, but may be conditioned upon the Applicants receiving the required approvals or amendments relating to the licenses required to operate the business, if necessary;

i.  the Bid fully discloses the identity of each entity that will be entering into the transaction or the financing, or that is otherwise participating or benefiting from such bid;

j.  for a Sale Proposal, the Bid includes:

  i.  the purchase price in U.S. dollars and a description of any non-cash consideration, including details of any liabilities to be assumed by the Bidder and key assumptions supporting the valuation;

  ii.  a description of the Property that is expected to be subject to the transaction and any of the Property expected to be excluded;

  iii.  a specific indication of the financial capability of the Bidder and the expected structure and financing of the transaction;

  iv.  a description of the conditions and approvals required to complete the closing of the transaction;

  v.  a description of those liabilities and obligations (including operating liabilities) which the Bidder intends to assume and which such liabilities and obligations it does not intend to assume; and

  vi.  any other terms or conditions of the Sale Proposal that the Bidder believes are material to the transaction.

k.  for an Investment Proposal, the Bid includes:

  i.  a description of how the Bidder proposes to structure the proposed investment, restructuring, recapitalization, refinancing or reorganization, and a description of any non-cash consideration;

  ii.  the aggregate amount of the equity and/or debt investment to be made in the Business or the Applicants in U.S. dollars.

  iii.  the underlying assumptions regarding the pro forma capital structure;

<ol type="i" start="4">
<li>a specific indication of the sources of capital for the Bidder and the structure and financing of the transaction;</li>
<li>a description of the conditions and approvals required to complete the closing of the transaction;</li>
<li>a description of those liabilities and obligations (including operating liabilities) which the Bidder intends to assume and which such liabilities and obligations it does not intend to assume; and</li>
<li>any other terms or conditions of the Investment Proposal.</li>
</ol>

<ol type="a" start="12">
<li>the Bid includes acknowledgements and representations of the Bidder that the Bidder:</li>
</ol>

<ol type="i">
<li>is completing the Transaction on an "as is, where is" basis;</li>
<li>has had an opportunity to conduct any and all due diligence regarding the Property, the Business and the Applicants prior to making its Bid;</li>
<li>has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its Bid; and</li>
<li>did not rely upon any written or oral statements, representations, warranties, or guarantees whatsoever, whether express, implied, statutory or otherwise, regarding the Business, the Property, or the Applicants or the completeness of any information provided in connection therewith, except as expressly stated in the definitive transaction agreement(s) signed by the Applicants;</li>
</ol>

<ol type="a" start="13">
<li>the Bid is received by the Bid Deadline; and</li>
<li>the Bid contemplates closing the Transaction set out therein immediately following the granting of the Sale Approval Order.</li>
</ol>

17. Following the Bid Deadline, the Monitor will assess the Bids received. The Monitor, in consultation with the Applicants and Royal Bank of Canada and will designate the most competitive bids that comply with the foregoing requirements to be "**Qualified Bids**". No Bids received shall be deemed not to be Qualified Bids without the approval of the Monitor. Only Bidders whose bids have been designated as Qualified Bids are eligible to become the Successful Bidder(s).

18. The Monitor, in consultation with the Applicants and Royal Bank of Canada, may waive strict compliance with any one or more of the requirements specified above and deem such non-compliant Bids to be a Qualified Bid. The Monitor and the Applicants will be under no obligation to negotiate identical terms with, or extend identical terms to, each Bidder.

19. The Monitor shall notify each Bidder in writing as to whether its Bid constituted a Qualified Bid within two (2) business days of the Bid Deadline, or at such later time as the Monitor deems appropriate .

20. The Monitor may, in consultation with the Applicants, aggregate separate Bids from unaffiliated Bidders to create one Qualified Bid.

**Evaluation of Competing Bids**

21. A Qualified Bid will be evaluated based upon several factors including, without limitation: (i) the Purchase Price and the net value provided by such bid, (ii) the identity, circumstances and ability of the Bidder to successfully complete such Transaction(s), (iii) the proposed Transaction documents, (iv) factors affecting the speed, certainty and value of the Transaction, (v) the assets included or excluded from the bid, (vi) any related restructuring costs,(vii) the likelihood and timing of consummating such Transaction, each as determined by the Applicants and the Monitor and (viii) any other factor deemed relevant by the Monitor in consultation with the Applicants.

**Auction**

22. If the Monitor receives at least two Qualified Bids and determines, in consultation with the Applicants and Royal Bank of Canada that they are competitive, the Monitor will conduct and administer an Auction in accordance with the terms of this SISP (the "**Auction**"). Instructions to participate in the Auction, which will take place via video conferencing, or in person, as determined by the Monitor, and will be provided to Qualified Parties (as defined below) not less than 24 hours prior to the Auction.

23. Only parties that provided a Qualified Bid by the Bid Deadline, as confirmed by the Monitor, (collectively, the "**Qualified Parties**"), shall be eligible to participate in the Auction. No later than 5:00 p.m. (EST) on the day prior to the Auction, each Qualified Party must inform the Monitor whether it intends to participate in the Auction. The Monitor will promptly thereafter inform in writing each Qualified Party who has expressed its intent to participate in the Auction of the identity  of all other Qualified Parties that have indicated their intent to participate in the Auction.

**Auction Procedure**

24. The Auction shall be governed by the following procedures:

   a. **Participation at the Auction.** Only the Applicants, the Qualified Parties, the Monitor and each of their respective advisors will be entitled to attend the Auction, and only the Qualified Parties will be entitled to make any subsequent Overbids (as defined below) at the Auction. The Monitor shall provide all Qualified Bidders with the details of the lead bid by 5:00 PM (EST) by no later than five (5) days after the Bid Deadline. Each Qualified Bidder must inform the Monitor whether it intends to participate in the Auction no later than 5:00 PM (EST) on the Business Day prior to the Auction;

b. **No Collusion.** Each Qualified Party participating at the Auction shall be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the Auction and the bid process; and (ii) its bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bid;

c. **Minimum Overbid.** The Auction shall begin with the Qualified Bid that represents the highest or otherwise best Qualified Bid as determined by the Monitor, in consultation with the Applicants (the "**Initial Bid**"), and any bid made at the Auction by a Qualified Party subsequent to the Monitors announcement of the Initial Bid (each, an "**Overbid**"), must proceed in minimum additional cash increments of USD $50,000;

d. **Bidding Disclosure.** The Auction shall be conducted such that all bids will be made and received in one group video-conference or otherwise, on an open basis, and all Qualified Parties will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Party will be fully disclosed to all other Qualified Parties and that all material terms of each subsequent bid will be fully disclosed to all other Qualified Parties throughout the entire Auction; provided, however, that the Monitor, in its discretion, may establish separate video conference rooms to permit interim discussions between the Monitor and individual Qualified Parties with the understanding that all formal bids will be delivered in one group video conference, on an open basis;

e. **Bidding Conclusion.** The Auction shall continue in one or more rounds and will conclude after each participating Qualified Party has had the opportunity to submit one or more additional bids with full knowledge and written confirmation of the then-existing highest bid(s);

f. **No Post-Auction Bids.** No bids will be considered for any purpose after the Auction has concluded; and

g. **Auction Procedures.** The Monitor shall be at liberty to set additional procedural rules at the Auction as it sees fit.

## Selection of Successful Bid

25. Before the conclusion of the Auction, the Monitor, in consultation with the Applicants, will:

a. review and evaluate each Qualified Bid, considering the factors set out in paragraph 16 and any other factor that the Applicants or the Monitor may reasonably deem relevant, provided that each Qualified Bid may be negotiated among the Monitor in consultation with the Applicants and the Qualified Bidder, and may be amended, modified or varied to improve such Qualified Bid as a result of such negotiations; and

     b.   identify the highest or otherwise best bid received at the Auction (the "**Successful Bid**" and the Qualified Party making such bid, the "**Successful Party**").

26. The Successful Party shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made within one business day of the Successful Bid being selected as such, unless extended by the Monitor, in consultation with the Applicants, subject to the milestones set forth in paragraph 9.

**Sale Approval Motion Hearing**

27. At the hearing of the motion to approve any transaction with a Successful Party (the "**Sale Approval Motion**"), the Monitor or the Applicants shall seek, among other things, approval from the Court to consummate any Successful Bid. All the Qualified Bids other than the Successful Bid, if any, shall be deemed to be rejected by the Monitor and the Applicants on and as of the date of approval of the Successful Bid by the Court.

**Confidentiality and Access to Information**

28. All discussions regarding a Sale Proposal, Investment Proposal, or Bid should be directed through the Monitor. Under no circumstances should the management of the Applicants be contacted directly without the prior consent of the Monitor. Any such unauthorized contact or communication could result in exclusion of the interested party from the SISP process.

29. Participants and prospective participants in the SISP shall not be permitted to receive any information that is not made generally available to all participants relating to the number or identity of Potential Bidders, Bidders, Qualified Bids, the details of any Bids submitted or the details of any confidential discussions or correspondence between the Applicants, the Monitor and such other bidders or Potential Bidders in connection with the SISP, except to the extent the Applicants, with the approval of the Monitor and consent of the applicable participants, are seeking to combine separate bids from Qualified Bidders.

**Supervision of the SISP**

30. The Monitor shall oversee and conduct the SISP, in all respects, and, without limitation to that supervisory role, the Monitor will participate in the SISP in the manner set out in this SISP Procedure, the SISP Order, the Initial Order and any other orders of the Court, and is entitled to receive all information in relation to the SISP.

31. This SISP does not, and will not be interpreted to create any contractual or other legal relationship between the Applicants or the Monitor and any Potential Bidder, any Qualified Bidder or any other Person, other than as specifically set forth in a definitive agreement that may be entered into with the Applicants.

32. Without limiting the preceding paragraph, the Monitor shall not have any liability whatsoever to any person or party, including without limitation any Potential Bidder, Bidder, the Successful Bidder, the Applicants, the DIP Lender, or any other creditor or other stakeholder of the Applicants, for any act or omission related to the process contemplated by this SISP Procedure, except to the extent such act or omission is the result from gross

negligence or willful misconduct of the Monitor. By submitting a bid, each Bidder, or Successful Bidder shall be deemed to have agreed that it has no claim against the Monitor for any reason whatsoever, except to the extent that such claim is the result of gross negligence or willful misconduct of the Monitor.

33. Participants in the SISP are responsible for all costs, expenses and liabilities incurred by them in connection with the submission of any Bid, due diligence activities, and any further negotiations or other actions whether or not they lead to the consummation of a Transaction.

34. The Monitor, in consultation with the Applicants, shall have the right to modify the SISP Procedure (including, without limitation, pursuant to the Bid process letter) if, in their reasonable business judgment, such modification will enhance the process or better achieve the objectives of the SISP; provided that the Service List in these CCAA proceedings shall be advised of any substantive modification to the procedures set forth herein.

**Deposits**

35. All Deposits received pursuant to this SISP shall be held in trust by the Monitor. The Monitor shall hold Deposits paid by each of the Bidders in accordance with the terms outlined in this SISP. In the event that a Deposit is paid pursuant to this SISP and the Monitor elects not to proceed to negotiate and settle the terms and conditions of a definitive agreement with the Person that paid such Deposit, the Monitor shall return the Deposit to that Person. In the event that the Successful Bidder defaults in the payment or performance of any obligations owed to the Monitor or the Applicants pursuant to any Final Agreement, the Deposit paid by the Successful Bidder, as applicable, shall be forfeited as liquidated damages and not as a penalty.